UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CENTRAL NEW YORK LABORERS' HEALTH
AND WELFARE, PENSIONS, ANNUITY
AND TRAINING FUNDS, by Janet M Moro,
as Fund Administrator; OSWEGO LABORERS'
LOCAL 215 PENSION FUND, by David Henderson,
as Administrator; and LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, LOCAL UNION
NO. 633, by Gabriel M. Rosetti, III, as Business Manager,

          Plaintiffs,    5:09-CV-0509
                   (GTS/GJD)
v.

FIVE STAR CONSTRUCTION SERVICES, INC.;
ANGELO COKER, Individually and as an Officer
of Five Star Construction Services, Inc.; and
STEVEN COKER, Individually and as an Officer
of Five Star Construction Services, Inc.,

          Defendants,
_____

APPEARANCES:         OF COUNSEL:

BLITMAN & KING, LLP       JENNIFER A. CLARK, ESQ.
 Counsel for Plaintiffs
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204

HON. GLENN T. SUDDABY, United States District Court Judge

## DECISION and ORDER

   Currently before the Court in this Employee Retirement Income Security Act of 1974

("ERISA") action filed by Central New York Laborers' Health and Welfare, Pensions, Annuity

and Training Funds, Oswego Laborers' Local 215 Pension Fund and Laborers' International

Union of North America, Local Union No. 633 ("Plaintiffs") against Five Star Construction

Services, Inc., Angelo Coker and Steven Coker ("Defendants") is Plaintiffs' motion for partial default judgment. (Dkt. No. 15.) For the reasons stated below, Plaintiffs' motion is granted in part and denied in part without prejudice.

I.      **RELEVANT BACKGROUND**

   A.      **Plaintiffs' Complaint**

Liberally construed, Plaintiffs' Complaint asserts the following claims against Defendants: (1) violation of 29 U.S.C. §1145; (2) violation of 29 U.S.C. §1104; (3) violation of 29 U.S.C. §1106; and (4) violation of 29 U.S.C. §1109.[1] (*See generally* Dkt. No. 1.) Generally, in support of those claims, Plaintiffs' Complaint alleges as follows: (1) Defendants failed to make contributions to multi-employer plans; (2) Defendants failed to timely remit contributions and deductions; (3) Defendants impermissibly used the assets and interest of the Plaintiffs' fiduciaries, participants and beneficiaries; and (4) Defendants have continuously failed to comply with their obligations to Plaintiffs, despite demand for compliance. (*Id*.)

   B.      **Plaintiffs' Service of Complaint and Defendants' Failure to Answer**

Between May 13, 2009 and June 3, 2009, Plaintiffs properly served their Complaint on each Defendant. (*See* Dkt. No. 5, 7, 8.) As of the date of this Decision and Order, Defendants have filed no Answer to that Complaint. (*See generally* Docket Sheet.)

---

[1] Plaintiffs' Complaint also seeks (1) declaratory judgment directing Defendants to produce their books and records for Plaintiffs review and audit (and pay the cost and expense of such audit including all attorneys' and paralegal fees and costs incurred in obtaining the audit), and (2) a permanent injunction directing Defendants "to perform and continue to perform their obligations to [P]laintiffs. . . ." (Dkt. No. 1.)

### C. Clerk's Office's Entry of Default and Defendants' Non-Appearance

On August 3, 2009, Plaintiffs filed a request for entry of default. (Dkt. No. 9.) On August 4, 2009, the Clerk of the Court entered default against Defendants pursuant to Fed. R. Civ. P. 55(a). (Dkt. No. 11.) As of the date of this Decision and Order, Defendants have not appeared and attempted to cure that entry of default. (*See generally* Docket Sheet.)

### D. Plaintiffs' Motion for Partial Default Judgment and Defendants' Non-Response

On March 15, 2010, Plaintiffs filed a motion for partial default judgment pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 15.)[2] As of the date of this Decision and Order, Defendants have filed no response to that motion. (*See generally* Docket Sheet.)

Generally, in support of their motion for default judgment, Plaintiffs argue as follows: (1) a delay in allowing Plaintiffs to enforce their claim and to collect the debt may result in the debt being uncollectible; (2) Defendants must be compelled to produce their books and records for Plaintiffs' review and audit (and pay the cost and expense of such audit including all attorneys' and paralegal fees and costs incurred in obtaining the audit) to ensure compliance with contributions required under an ERISA covered plan;[3] and (3) Plaintiffs are statutorily entitled to an award of the attorneys' fees and costs incurred in connection with the collection of the fringe benefit contributions and deductions. (Dkt. No. 15.) A greater familiarity with the grounds for

---

[2] The Court notes that Plaintiffs' motion for default judgment is with regard to the First, Second, Fourth, and Fifth causes of action.

[3] Plaintiffs also argue that the Court should retain jurisdiction to enter judgment in favor of Plaintiffs and against Defendants with regard to any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, costs and expenses for collection, audit fees and attorneys' and paralegal fees.

3

Plaintiffs' motion for partial default judgment is assumed in this Decision and Order, which is intended primarily for review of the parties.

## II.   LEGAL STANDARD GOVERNING MOTION FOR DEFAULT JUDGMENT

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id*. "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id*. (citing Fed. R. Civ. P. 55[b][2]).

Moreover, Fed. R. Civ. P. 54(b) provides that, "[w]hen an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183

F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]). This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

**III.   ANALYSIS**

    **A.   Liability**

After carefully considering Plaintiffs' unopposed motion, the Court is satisfied that Plaintiffs have met their modest threshold burden of establishing entitlement to partial default judgment against Defendants on the issue of liability, under the circumstances.[4] The Court notes that Plaintiffs' motion would survive even the heightened scrutiny appropriate on a contested motion.

For example, for the reasons stated above in Part I of this Decision and Order, the Court finds that due notice of this action has been given to Defendants. However, no Answer has been filed and no one has appeared on behalf of Defendants. Finally, the Clerk has already entered

---

    [4] In this District, a movant's burden with regard to an unopposed motion is lightened such that, in order to succeed, the movant need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases).

default against Defendants, and Plaintiffs have served Defendants with their motion for the issuance of default judgment. However, Defendants have still neither responded to the motion nor appeared in this action.

For each of these alternative reasons, the Court grants Plaintiffs' motion for the issuance of partial default judgment on the issue of liability pursuant to Fed. R. Civ. P. 55(b).

**B.     Damages**

**1.     Unpaid Contributions, Interest, Liquidated Damages and Audit Fees**

After carefully considering Plaintiffs' unopposed motion, the Court is satisfied that Plaintiffs' have met their burden of establishing a valid basis for the damages they seek with regard to unpaid contributions, interest, liquidated damages and audit fees, under the circumstances. The Court notes that, while a hearing to fix the amount of damages may be conducted,[5] a hearing is not required where the Court has found that there is a basis for the damages specified in the default judgment.[6]   Here, the Court has made such a finding.

For example, in support of their damages request, Plaintiffs have provided six (6) affidavits and nineteen (19) exhibits showing that Defendants are indebted to Plaintiffs in the sum of $62,406.56. More specifically, this sum consists of $27,569.01 in fringe benefit

---

[5]     *See* Fed. R. Civ. P. 55(b)

[6]     *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (noting that "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment"); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (noting that it is "not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had 'relied upon detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record gained during four years involvement with the litigation . . .'"); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (concluding that, where district judge was "inundated with affidavits, evidence, and oral presentations" a full evidentiary hearing was not necessary).

contributions, $13,937.71 in interest through April 1, 2010, $14,547.40 in liquidated damages, and $6,352.44 in audit fees.

Therefore, the Court concludes that Plaintiffs have met their burden of establishing a valid basis for the damages, and that default judgment against Defendants, awarding Plaintiffs $62,406.56 in damages, is appropriate.[7]

### 2.    Examination of Books and Records

Pursuant to the terms of the Collective Bargaining Agreement, Defendants are required to (1) permit Plaintiffs, on demand, to check, examine and audit their books and records, and (2) pay the cost and expense of such audit including all attorneys' and paralegal fees and costs incurred in obtaining the audit.  Because Plaintiffs have made a request to examine the books and records covering the period of June 2008 to present, the Court concludes that Plaintiffs are entitled to examine Defendants' books and records for this time period, and that Defendants must pay the cost and expense of such audit, including all attorney's and paralegal fees and costs incurred in obtaining the audit.

### 3.    Attorney's and Paralegal Fees and Costs

Pursuant to 29 U.S.C. §1132(g)(2), Plaintiffs are entitled to attorney's fees and costs incurred in collecting the amounts that Defendants owe them.[8]  However, the Court may award

---

[7]   *See Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *3-4 (finding, in an unopposed motion for default judgment based on an ERISA claim, that plaintiffs were entitled to unpaid contributions, interest on unpaid contributions, liquidated damages, and audit fees in amounts that plaintiffs claimed they were entitled to pursuant to the parties' agreement and/or 29 U.S.C. § 1132[g][2][C]).

[8]   29 U.S.C. § 1132(g)(2) provides, in pertinent part, as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a

only reasonable fees, to be determined, among other things, based on a reasonable hourly rate. *See, e.g., Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *3-4; *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-90 (2d Cir. 2008) (noting that the district court has "considerable discretion" in determining the presumptively reasonable fee, but that it should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate"). Plaintiffs seek attorneys' fees at the rate of $235.00 per hour for the work that their attorneys performed in this action during 2008, $247.00 per hour for the work that their attorneys performed in this action during 2009, and $252.00 per hour for the work their attorneys performed in this action during 2010. (Dkt. No. 15, Attach. 3, at 21 [Clark Affid.].) In addition, Plaintiffs seek fees for the work that two paralegals performed in this action at the rate of $128.00 per hour in 2008, $134.00 per hour in 2009, and $137.00 per hour in 2010. (*Id.*) Based on these rates, Plaintiffs seek attorney's fees in the total amount of $8,592.55. (*Id.*)[9] Plaintiffs also seek costs in the amount of $933.06. (*Id.*)

In *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, a case that is factually similar to the current action,[10] Senior United States District Judge

---

> judgment in favor of the plan is awarded, the court shall award
> the plan . . . reasonable attorney's fees and costs of the action,
> to be paid by the defendant . . .

[9] As evidence that this amount is justified, Plaintiffs have submitted the contemporaneous time records of their attorney and the paralegals who worked on this matter.

[10] It is worth noting that Plaintiff's counsel in the current action was the plaintiff's counsel in *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*.

Frederick J. Scullin, Jr., of this District, analyzed recent ERISA collection actions as well as the *Johnson* factors, and determined the reasonable hourly rates for attorneys and paralegals in ERISA collection actions in the Northern District of New York.[11]  More specifically, Judge Scullin concluded "that the reasonable hourly rate for an attorney . . . in this community who litigates cases such as this one, particularly where Defendant has defaulted, is $210.00 . . . [and] the reasonable hourly rate for the work of paralegals . . . is $80 per hour.  *Id*. at *18-19.[12]  This Court adopts the conclusion reached by Judge Scullin.[13]  Therefore, the Court finds that Plaintiffs' attorney is entitled to the rate of $210.00 per hour and a rate of $80 per hour for any work done by a paralegal.

In addition, as in *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, the Court questions whether some of the entries in the records that Plaintiffs submitted are related to this action or whether they are related to other actions involving the same parties.  By way of example, the Court is concerned with the following entries:

---

[11]     The *Johnson* factors include the following: "(1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . . (9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he 'undesirability' of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[12]     The Court notes that Plaintiffs counsel's submitted affidavits in both *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds* and the current case which are almost identical.

[13]     In doing so, the Court notes that (1) the records that Plaintiff's counsel provided in that case involved an overlap in time period with the records provided in this case, and (2) this action was filed within approximately three months of the Decision and Order issued in *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*.

| Date | Employee | Hours | Amount | Description |
|---|---|---|---|---|
| 7/25/2008 | JAC | 0.20 | 47.00 | Communicated with Bob Finkle of Delany regarding payment of debt |
| 10/14/2008 | JAC | 0.10 | 23.50 | Worked on letter to Delany and Release of Delaney and Onondaga County regarding Clinton Street project |
| 3/30/2009 | AAR | 1.00 | 134.00 | Drafted letters asserting claims against the Grant Street, Adhan/Liverpool, Delaney and Vector projects |
| 4/13/2009 | JAC | 0.20 | 49.40 | Received and reviewed letter from Oswego County regarding bridge job and sewer project; Drafted attorney work product memorandum regarding letters to New York State Department of Transportation and City of Oswego |

These are a few examples of entries that the Courts finds questionable. Furthermore, some entries appear to include some tasks that are related to this action and other tasks that are not. In light of the problems with these time records, the Court is unable to determine the number of hours that Plaintiffs' attorney and the attorney's paralegals expended on this matter. Therefore, the Court denies Plaintiffs' request for attorney's fees without prejudice and directs Plaintiffs' counsel to file contemporaneous time records that accurately reflect the amount of time expended on this matter.

Plaintiffs are also entitled to recover the costs associated with this litigation, including copying costs, facsimile costs, filing fees, postage and delivery costs, costs associated with services of the summons and complaint, and computer research costs. In their submission, Plaintiffs state that they have expended $933.06 on such items. The Court, however, is hesitant to award costs for these items because it suspects that these items may suffer from the same problems as do the contemporaneous time records. Therefore, the Court denies Plaintiffs'

request for costs without prejudice and directs Plaintiffs' counsel to file a document that accurately depicts the expenses that are associated with this matter.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for entry of partial default judgment against Defendants with regards to Plaintiffs' First, Second, Fourth and Fifth causes of action (Dkt. No. 15) is **GRANTED with respect to liability**; and it is further

**ORDERED** that Plaintiffs' motion for entry of a default judgment against Defendants with regard to Plaintiffs' First, Second, Forth and Fifth causes of action (Dkt. No. 15) is **DENIED without prejudice with respect to damages**; and it is further

**ORDERED** that, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs' counsel shall file documentation, including contemporaneous time records and expense calculations, that accurately reflect the hours that Plaintiffs' counsel and the paralegals expended on this action and the expenses incurred herein;[14] and it is further

**ORDERED** that Defendants are required to produce their books and records for the period of June 2008 to date for Plaintiffs' review and audit, and to pay the cost and expense of such audit, including all attorney and paralegal fees and costs incurred in obtaining the audit; and it is further

---

[14]   Once the Court has had an opportunity to review Plaintiffs' counsel's submission with regards to attorney's fees and costs, it will calculate the appropriate attorney's fees award and, at that time, will enter final judgment for the total amount that Defendants owe Plaintiffs with respect to Plaintiffs' First, Second, Forth and Fifth Cause of Action, including unpaid contributions, interest on unpaid contributions, liquidated damages, and audit costs in the amount of $62,406.56.

11

**ORDERED** that the Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of Defendants' books and records. After completion of the audit, Plaintiffs may move for entry of judgment against Defendants for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, costs and expense of collection, the cost and expense of such audit fees, and attorney and paralegal fees associated therewith.

Date:   June 17, 2010
          Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge